**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISON**

**CASE NO. 1:22-cv-21480 SCOLA/GOODMAN**

MARITZA MOLINA,

                 Plaintiff,

v.

KILOLO KIJAKAZI
ACTING COMM'R OF SOC. SEC.,
                 Defendant.

_____/

**OMNIBUS REPORT AND RECOMMENDATIONS**
**ON SUMMARY JUDGMENT MOTIONS**

This case challenges a denial of social security benefits. Plaintiff Maritza Molina ("Plaintiff") and Defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration ("Commissioner"), filed cross-motions for summary judgment. [ECF Nos. 18; 22]. The Commissioner's summary judgment motion also served as her opposition response to Plaintiff's motion. [ECF No. 22]. Plaintiff did not file her Court-ordered [ECF No. 12] response to the Commissioner's motion, and the time to do so has long expired.

According to the Clerk's directive in these types of administrative appeals, all dispositive matters have been referred to the Undersigned for a Report and Recommendations. [ECF No. 2]. Additionally, United States District Judge Robert N. Scola, Jr. issued a scheduling order referring this matter to the Undersigned "for a

ruling on all pre-trial, non-dispositive matters and for a report and recommendation on any dispositive matters, pursuant to 28 U.S.C. § 636 and Local Magistrate Judge Rule 1." [ECF No. 7].

As explained below, the Undersigned **respectfully recommends** that the District Court **deny** Plaintiff's summary judgment motion, **grant** the Commissioner's summary judgment motion, and enter a final judgment in favor of the Commissioner.

## I.     Procedural Background

On July 28, 2019, Plaintiff filed disability applications under Title II and XVI of the Social Security Act (R. 349-352)[1]. She alleged a disability onset date of January 1, 2019. *Id*. She alleged disability due to: asthma; obesity; diabetes; hyperlipidemia; thyroid disorder; obstructive sleep apnea; degenerative disc disease of the spine; hypertension; gastroesophageal reflux disease; schizophrenia disorder; bipolar disorder; and anxiety. (R. 18). The Commissioner denied Plaintiff's applications initially and on reconsideration. (R. 62-142, 145-72). Plaintiff then appealed the Commissioner's decision. The Appeals Council denied her request. (R. 112-28).

On December 16, 2021, Administrative Law Judge Rebecca Wolf ("the ALJ") held a telephonic hearing where she heard testimony from Plaintiff (who was represented by counsel) and from a Vocational Expert ("VE"). (R. 36). On January 6, 2022, the ALJ

---

[1]     Citations to ("R. __") refer to pages of the administrative record transcript. [ECF No. 15].

issued her decision, concluding that Plaintiff was not disabled. (R. 12). On February 11, 2022, Plaintiff appealed the ALJ's decision. (R. 345-47). The Appeals Council affirmed the ALJ's decision. (R. 1-6).

## II.     Factual Background

Plaintiff was 47 years old on her alleged onset date of January 1, 2019. (R. 12-26). She has a high school education, and her past relevant work experience included work as an insurance office manager and an insurance sales agent, a composite job. *Id*. Plaintiff reported that she stopped working due to her depression, chronic sciatica, chronic back pain, diabetes, asthma, severe allergies, hypothyroidism, morbid obesity, and bipolar disorder. (R. 388). She testified that she cannot walk too much or stand for more than five minutes or else her feet will burn. (R. 48). Additionally, if she remained seated in a fixed position without moving for more than five minutes, then she would experience back pain. *Id*.

Plaintiff testified regarding her mental health issues. She said that she experiences a lack of interest and energy. (R. 49). She elaborated that she cries endlessly in bed; she cannot concentrate; she gets overwhelmed with simple things; and that she wants to be alone. *Id*. She denied participating in social activities or receiving visitors. (R. 50).

## III.     Applicable Legal Standards

### a.     *Standard of Review*

In evaluating a claim for disability benefits, an ALJ must follow the five steps

outlined in 20 C.F.R. §§ 416.920(a) and 404.1520, which the Undersigned summarizes as

follows:

1. **Step one**. Is the claimant performing substantial gainful activity? If not, then an ALJ next determines:

2. **Step two**. Does the claimant have one or more severe impairments? If the claimant does, then an ALJ next considers:

3. **Step three**. Does the claimant have a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled; if not, then an ALJ must determine claimant's residual functional capacity ("RFC"); and then determine:

4. **Step four**. Based on the RFC, can claimant perform his or her past relevant work? If so, then the claimant is not disabled. If the claimant cannot perform his or her past relevant work, then an ALJ must finally determine:

5. **Step five**. Based on the claimant's age, education, and work experience, and the RFC, can he or she perform other work? If so, then the claimant is not disabled. If not, then the claimant is disabled and entitled to benefits.

*See, e.g.*, *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

The claimant bears the burden of proving that she is disabled within the meaning

of the Social Security Act. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). In

reviewing the decision, the Court must consider the record as a whole and determine

whether the ALJ applied the correct legal standard and whether substantial evidence in

the record supports his findings of fact. *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir.

1984). "Substantial evidence is more than a scintilla, but less than a preponderance. It is

such relevant evidence as a reasonable person would accept as adequate to support a

conclusion." *Phillips*, 357 F.3d at 1240 n.8 (internal citation omitted).

The Court is authorized to enter a judgment affirming, modifying, or reversing the decision of an ALJ, with or without remand. 42 U.S.C. § 405(g); *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1302 n.13 (11th Cir. 2000).

### IV.    The ALJ's Findings

In denying Plaintiff's claim for benefits, the ALJ followed the sequential five-step evaluation process for social security claims. (R. 16-26). At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since January 1, 2019, the alleged disability onset date. (R. 17).

At step two, the ALJ concluded that Plaintiff had the following severe impairments: asthma; obesity; diabetes; hyperlipidemia; thyroid disorder; obstructive sleep apnea; degenerative disc disease of the spine; hypertension; gastroesophageal reflux disease; schizophrenia disorder; bipolar disorder; and anxiety. (R. 18).

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments classifiable as a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). *Id.*

At step four, after a review of the entire record, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), excluding some physical limitations. (R. 20).

Additionally, the ALJ found that Plaintiff can frequently interact with others at work, can maintain concentration for at least two hours at a time, and remain on task ninety (90) percent of the day. *Id*. In making this finding, the ALJ found that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms; however, [ ] [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these systems are not entirely consistent with the medical evidence and other evidence in the record." (R. 21).

Finally, at step five, the ALJ decided that Plaintiff was unable to perform any past relevant work under 20 C.F.R. §§ 404.1565 and 416.965. (R. 24). The ALJ considered Plaintiff's age, education, work experience, and RFC, in concluding that Plaintiff **could** perform jobs including cafeteria attendant, routing clerk, and stock clerk. (R. 26).

Accordingly, the ALJ held that Plaintiff had not been under a disability from January 1, 2019 through the date of the ALJ's decision (January 6, 2022). *Id*.

## V.    Analysis

Plaintiff raises only one argument in her summary judgment motion. [ECF No. 18]. She argues that the ALJ's decision is internally inconsistent as to the "paragraph B" criteria assessment, concluding in one section that Plaintiff had "mild" limitations in the domain of "interacting with others," but then elsewhere noting that Plaintiff had "moderate" limitations within the same domain and finding the opinions of state

agency psychologists (who themselves concluded Plaintiff had "moderate" limitations in "interacting with others") were "consistent with the evidence." *Id*.

In determining whether a mental health condition qualifies as severe at Step Two, the ALJ must rate a claimant's degree of functional limitation across four areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(c), 416.920a(c). These four areas are commonly referred to as the paragraph B criteria.

The ALJ must rate the claimant's degree of limitation in these four areas using a five-point scale: none, mild, moderate, marked, or extreme. *Id.* The regulations define the term "marked limitation" to mean "[y]our functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited" and the term "extreme limitation" to mean that "[y]ou are not able to function in this area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404, Subpart P, Appendix 1, 12.00(F)(2).

"Mild limitation" is defined as "[y]our functioning in this area independently, appropriately, effectively, and on a sustained basis is *slightly* limited" and "moderate limitation" to mean "[y]our functioning in this area independently, appropriately, effectively, and on a sustained basis is *fair*." *Id*. (emphasis added).

In the instant case, the ALJ determined in her paragraph B assessment that Plaintiff had a "**mild**" limitation in the area of interacting with others. (emphasis added) (R. 19). She explained that Plaintiff "did not allege any problems related to this domain in her function report, but at the hearing she testified that she does not talk to neighbors and is not visited by friends." (R. 19 citing Ex. 4E). The ALJ additionally stated that the medical evidence illustrated how Plaintiff had "a good rapport with providers, [and] was described as pleasant and cooperative, made good eye contact, and appeared comfortable during appointments." (R. 19 citing Ex 28F; 31F).

After ascribing a *mild* limitation in interacting with others, the ALJ formulated an RFC that allowed for "**frequent** interact[ion] with supervisors, coworkers, and the public." (R. 20 (emphasis added)). But, in explaining her RFC rationale, the ALJ later noted that Plaintiff's progress notes reflect a "**moderate** limitation" in interacting with others. (R. 24 (emphasis added)). The ALJ concluded the explanation behind her RFC rationale with, "while the claimant has some functional limitations, her complaints are not consistent with the evidence of record to the degree that she would be precluded from performing all work-related activity." *Id*.

Plaintiff argues that the ALJ's RFC finding (i.e., indicating Plaintiff is capable of "frequent" interaction with supervisors, coworkers, and the public) renders her decision "inarguably ambiguous" because the ALJ used both "mild" and "moderate" limitations within the same domain. [ECF No. 18]. Plaintiff claims it is "inarguably

ambiguous" whether the RFC limitation (i.e., capable of frequent interaction with others) is meant to correspond with "mild" or "moderate" limitations. *Id*. The Undersigned disagrees.

The Commissioner expressly notes in her response that "paragraph B ratings are **not** an **assessment** of a claimant's *RFC*; instead they are used to **rate** the severity of a claimant's mental impairments at steps two and three of the sequential evaluation process." [ECF No. 22, p. 8 (citing (R. 19(emphasis supplied)))].[2] Therefore, the Commissioner argues (in the consolidated summary judgment motion/response memorandum) that there is actually no inconsistency between the use of the terms "mild" and "moderate" in the same ALJ ruling. *Id*.

The Commissioner states that the ALJ based her "mild" limitation on the overall record, "including Plaintiff's admissions, and not only her treatment records showing good rapport with providers." *Id*. Therefore, according to the Commissioner, the ALJ's statement that the "treatment records reflect[ing] moderate social limitations is [consistent] with her overall finding of mild limitations in that domain." *Id*.

Prescribing a limitation to a general domain like interacting with others is not equivalent to a statement of what information is found within medical records. They

---

[2]       The paragraph B criteria measure a claimant's ability in four areas of mental functioning, 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(A)(2)(b), whereas an "RFC [is] that which an individual is still able to do despite the limitations caused by his or her impairments." *Phillips*, 357 F.3d at 1238; *see also* 20 C.F.R. 404.1545(a)(1).

involve two separate types of analysis. Plaintiff tries to equate the "mild" limitation assigned to the "interacting with others" domain from the paragraph B criteria (which involves an overall analysis) with a statement simply and specifically describing Plaintiff's progress notes. After a review of the ALJ's findings, the Undersigned agrees with the Commissioner.

The ALJ stated in her RFC rationale that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were inconsistent with the objective findings from the record. (R. 23). She found that Plaintiff's alleged limitations were "self-limiting" and that her allegations lacked support from the medical record. *Id.* The ALJ noted the State agency psychological consultants found that Plaintiff had moderate limitations in the paragraph B criteria -- and that those opinions are consistent with the record evidence. (R. 24). The ALJ also explained that:

> While [ ] [Plaintiff] has reported mood swings, increased anxiety, and ruminating thoughts, her mental status examinations generally showed that she was oriented, had fair memory, good concentration, and she denied hallucinations [(]8F; 9F; 18F; 28F; 32F). [ ] [Plaintiff] alleges considerable psychological limitations, but she has been consistently cooperative, fully oriented, and calm with good eye contact on examination (Ex. 4F, 5F, 6F, 7F).

*Id.*

The ALJ further acknowledged that Plaintiff does in fact have some functional limitations, but she concluded that Plaintiff's complaints "are not consistent with the

evidence of record to the degree that she would be precluded from performing all work-related activity." (R. 24).

In her "paragraph B" finding, the ALJ noted these same points when she found that Plaintiff had "mild limitations" in interacting with others. (R. 19). To be sure, the ALJ separated Plaintiff's mental health issues point-by-point in her "paragraph B" finding but, in elaborating on her RFC rationale, she groups them together within the same sentences and paragraph.

Even though the sections are formatted differently, both reach the same conclusion: Plaintiff's claims are inconsistent with the medical evidence. Regardless of the ALJ's use of both the "mild" and "moderate" language, she *definitively* states that Plaintiff "**can** frequently interact with supervisors, coworkers, and the public." (R. 20(emphasis supplied)). And the level of interaction with others is, at bottom, the fundamental point Plaintiff argues here.

The ALJ's RFC finding accounted for Plaintiff's social limitations by restricting her to frequent, *rather than constant*, interaction with supervisors, coworkers, and the public. *Id*. Even if the ALJ's statements regarding Plaintiff's level of social impairment were inconsistent, her statement of the resulting RFC limitations — frequent interaction with supervisors, coworkers, and the public — is unequivocal. *Id*.

Plaintiff points out that there is "no regulation or ruling that specifically equates 'mild' limitation with 'frequent' ability to interact or 'moderate' limitation with only

"occasional" ability to interact." [ECF No. 18]. Yet Plaintiff still seeks a clarification as to whether "mild" is equated with "frequent" and "moderate" is equated with "occasional." Plaintiff's quest for clarification on an issue with no specified regulation or ruling, as stated by Plaintiff herself, is not a valid ground for remand, especially when there is substantial evidence in the record to support the ALJ's decision.

Even if the ALJ unintentionally wrote "mild" instead of "moderate" in that *singular* paragraph, any such error was harmless due to the consistency within her findings and her definitive statement regarding "frequent" interactions. *See Vangile v. Comm'r, Soc. Sec. Admin.*, 695 F. App'x 510, 514 (11th Cir. 2017) ("[A]ny step two error the ALJ may have committed by failing to explicitly mention Vangile's chronic mastoiditis was harmless because she found two other severe impairments and proceeded to step three in any event."); *Collica v. Kijakazi*, No. 21-CV-60015, 2022 WL 4287602, at *10 (S.D. Fla. July 28, 2022), report and recommendation adopted, No. 21-60015-CIV, 2022 WL 3907900 (S.D. Fla. Aug. 31, 2022) ("[A]n error in failing to classify an impairment as severe at step two 'results in harmless error when the correct application would not contradict the ALJ's ultimate findings and his decision would stand.'" (quoting *Stewart v. Comm'r of Soc. Sec. Admin.*, 746 F. App'x 851, 852 (11th Cir. 2018))).

Plaintiff's argument assumes that the ALJ's use of "frequent" (for permitted social interactions) always correlates with the paragraph B "mild" language (for

limitations). [ECF No. 18]. However, Plaintiff undermined her own argument by noting that there is no legal doctrine or opinion automatically tethering "frequent" and "mild." *Id*.

Plaintiff attempts to bootstrap the ALJ's purported "inconsistent" rationale into a reason to support the theory that the language inconsistency somehow affected the VE's testimony. Plaintiff argues that the "internal inconsistency" is problematic because it materially impacted the VE's testimony. *Id*. Plaintiff seeks a remand based on the argument that she would like to know how the VE's testimony would have changed had the ALJ used "occasionally" instead of "frequent" (when discussing the frequency with which she can interact with others). *Id*. Plaintiff does not challenge the validity of the VE's testimony. Instead, she focuses only on the precise wording of the information posed to the VE in the hypothetical and then speculates on its impact. *Id*.

In the first hypothetical, the ALJ asked the VE to consider a situation where an individual could frequently interact with others in addition to other conditions. (R. 57). In the second hypothetical, the ALJ modified it with two conditions: to someone having 5% less concentration, and that the individual "could only occasionally ignore or avoid distractions, including psychologically-based symptoms while working and while working with others without interrupting or distracting them." (R. 58). Only for the second hypothetical did the VE testify that all potential competitive employment would be eliminated. (R. 59).

Neither the Dictionary of Occupational Titles ("DOT") nor its companion publication, the Selected Characteristics of Occupations ("SCO"), define the frequency "with which a worker must interact with supervisors, coworkers, or the public." [ECF No. 18]. According to Plaintiff, the VE supplies that information. *Id*. Plaintiff argues that "even if it were possible to ascertain whether the ALJ here meant 'occasionally' instead of 'frequently,' it would still be impossible to independently determine whether the jobs the ALJ relied on at step five could still be performed within the parameters of those more restrictive limitations." *Id*.

The Undersigned is not convinced. For example, in *Graham v. Bowen*, 790 F.2d 1572, 1576 (11th Cir. 1986), the appellant argued that the hypothetical question posed by the ALJ was insufficient because it failed to account for the appellant's lung disease and chronic emphysema. Like in the instant case, when the ALJ in *Graham* applied the two additional conditions to the hypothetical, the VE testified that there would be no jobs "at the light level to which appellant could transfer his skills." However, the Court held that the appellant's argument was *irrelevant* because the ALJ found that "the level of work the [appellant] can do is not significantly affected by his non-exertional limitations." *Id*.

Finally, Plaintiff claims that the ALJ failed to articulate how persuasive she found the State agency psychological consultant opinions despite the requirement to do so under 20 C.F.R §§ 404.150c(b) and 416.920c(b). *Id*. The Undersigned finds that the ALJ's

14

reasoning was clear enough to demonstrate that she found those opinions persuasive. For example, in the paragraph previous to the one at issue, the ALJ found that the physical limitations prescribed by the State agency medical consultants were persuasive *because* they were consistent with the objective record. (R. 23). In the paragraph at issue, concerning the consultants' finding that Plaintiff had "moderate" limitations in the paragraph B criteria of the listings, the ALJ explicitly determined that these opinions from the State agency psychological consultants were consistent with the evidence of record. (R. 24).

The ALJ repeatedly labeled Plaintiff's limitations as moderate within that same paragraph. *Id*. Any error stemming from the ALJ's failure to specifically articulate how persuasive the opinions from the State agency psychological consultants were is harmless due to her consistency. Even if the ALJ were to specifically detail how persuasive she found those opinions, they still would not change the final result. *See, e.g., Alvarez v. Comm'r of Soc. Sec.*, No. 20-CV-24711, 2022 WL 2092886, at *2 (S.D. Fla. June 10, 2022) (collecting cases for the proposition "that the ALJ need not use any 'magic words' in considering the two factors" of supportability and consistency and finding "the ALJ's simultaneous consideration of both factors was not improper" (citations omitted)).

## VI.    Conclusion

The ALJ adequately evaluated Plaintiff's ability to interact with others. Substantial evidence supports her RFC finding. The slight difference in language (i.e., using "mild," instead of "moderate," for social limitations) is too slim of a read to justify a remand. Even if the ALJ's statements regarding Plaintiff's level of social impairment were "inconsistent," her statement of the resulting RFC limitations — frequent interaction with supervisors, coworkers, and the public — is unequivocal (R. 20).

Moreover, although Plaintiff's challenge here focuses on social limitations for interacting with others, Plaintiff admitted in her function report that her impairments do not affect her ability to get along with others, including family, friends, and neighbors. She also noted that she speaks with others every day. (R. 399-400).

And the medical evidence corroborates Plaintiff's own report. As the ALJ explained, her providers repeatedly described her as being pleasant, cooperative, and/or making appropriate eye contact (R. 19, 22- 23, 711, 877, 919, 963, 965, 967, 969, 971, 973, 975, 977, 979, 981, 983, 1094, 1102, 1141, 1145, 1148, 1151, 1158, 1161, 1164, 1167, 1170, 1173, 1176, 1179, 1182, 1185, 1233, 1239, 1243, 1246, 1249, 1252, 1658, 1662, 1665, 1671, 1674, 1677). Indeed, even on the occasions when Plaintiff was tearful or depressed when receiving psychiatric treatment from Larkin Community Hospital, she was pleasant, cooperative, and alert with appropriate eye contact (R. 1233, 1239, 1243, 1246, 1658).

The Undersigned therefore **respectfully recommends** that the District Court **deny** Plaintiff's summary judgment motion, **grant** the Commissioner's summary judgment motion, and enter a final judgment in favor of the Commissioner.

## VII.   Objections

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interests of justice. *See* 29 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on July 14, 2023.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola Jr.
All counsel of record

17